BENJAMIN M. TAYLOR *vs.* PATRICK J. ASHE, executor.

Berkshire.    September 19, 1933. — October 24, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Contract*, Validity, To make a will. *Husband and Wife. Equity Jurisdiction*, Plaintiff's clean hands. *Frauds, Statute of. Fraud. Marriage and Divorce.*

It *was stated* that a contract in writing, executed only by a husband and his wife, although there was a recital in its first paragraph that it was "by and between" them and a third party, "trustee for both . . . parties," in which there were statements that the "said husband and wife hereby mutually agree to separate and live apart," and other terms were agreed upon between them, was void by reason of the provision of G. L. (Ter. Ed.) c. 209, § 2.

After a husband and his wife had signed what purported to be a contract in writing between them that they should live apart and that the wife should not institute divorce proceedings, and after the husband, in accordance with terms therein stated, had given a substantial amount of property to the wife and the parties had lived apart for six years by mutual consent, the wife determined to institute proceedings for divorce and had private conferences with the husband as a result of which she made restitution to him of a part of what he had given her at the time of the separation and orally agreed that she would not seek alimony in the divorce proceedings and that she would make a will giving him substantially one half of her estate, and he agreed not to contest the divorce. She then filed a libel for divorce on the ground of desertion without seeking alimony, and he informed the court that he did not care to be heard in the matter. A decree *nisi* was entered, granting the wife the divorce on the ground of "utter desertion," and after it became absolute she died without having made the promised will. The former husband thereupon brought a bill in equity against her estate seeking restitution of the balance of what he had given her at the time of the separation by mutual agreement. The bill was dismissed. The plaintiff appealed. *Held*, that

(1) By reason of the statute of frauds, G. L. (Ter. Ed.) c. 259, § 5, the wife's oral agreement to make a will was unenforceable, and the suit could not be maintained on the ground that the failure to make a will was a failure of consideration for the plaintiff's promise not to contest the divorce proceedings;

(2) The plaintiff's agreement not to contest the groundless libel for divorce and his conduct in not doing so were a fraud upon the court and against public policy;

(3) The plaintiff did not come into court with clean hands respecting the subject matter of the suit;

(4) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on May 8, 1930, and afterwards amended, described in the opinion.

The suit was referred to a master. The introductory paragraph of the agreement in writing of September, 1922, was as follows: "INDENTURE made by and between Benjamin M. Taylor of North Adams, Commonwealth of Massachusetts, party of the first part, and Belle M. Taylor of said North Adams, party of the second part; and Patrick J. Ashe of said North Adams, trustee for both of said parties." The first paragraph was as follows: "The said husband and wife hereby mutually agree to separate and live apart from each other during the remainder of their matrimonial obligation, unless they should mutually agree to vacate this agreement." All other agreements were stated as being between the husband and the wife. There was no agreement by either with the "trustee," nor by the "trustee" with either of them. The agreement was signed by the husband and wife only.

Other material facts found by the master are stated in the opinion. The master's report was confirmed. By order of *W. A. Burns*, J., a final decree was entered dismissing the bill. The plaintiff appealed.

*F. M. Myers*, (*C. T. Phelps* with him,) for the plaintiff.

*C. H. Wright*, for the defendant.

CROSBY, J. In this suit in equity the plaintiff seeks to recover certain personal property transferred by him to his wife and which the defendant now holds as the executor of her estate. It is the contention of the plaintiff that his wife, in violation of an agreement she made with him,

brought a petition for divorce, and, after he had refrained from opposing the petition in reliance upon her promise to make a will in his favor, she failed to do so. The case was referred to a master who filed a report, and an interlocutory decree was entered overruling the defendant's objections to the report and confirming it. A final decree was entered dismissing the bill with costs, from which the plaintiff appealed.

The master found the following facts: The plaintiff and the defendant's testatrix were married in 1905 and lived sometimes together and sometimes apart from 1907 until her decease on May 30, 1929, their domestic life not being altogether happy. He became infatuated with another woman, and his wife drank immoderately of intoxicating liquors, at times to such excess that her condition required the attendance of a physician skilled in the treatment of alcoholic neurosis. Each was desirous of being separated from the other, the wife the more so as her husband's disregard of his marriage vows distressed her more than her indulgence in liquor disturbed him. In September, 1922, they agreed to separate and at that time entered into a written agreement by which the defendant Ashe, as trustee for both, was made a party. The agreement so far as material in this case provided that the plaintiff's wife should carry on for her sole benefit a theater upon which he held a lease, and any renewal thereof, in all respects as if she were unmarried; that "neither she, nor any other person or persons on her behalf . . . shall or will institute any action . . . against the said husband . . . for divorce . . .."; that he would advance to the trustee for her use and benefit the sum of $25,000, and she should have and own all the furniture in the rooms occupied by them; that she would retain and own all jewelry, diamonds and wearing apparel owned or possessed by her as her separate property; that if she should institute any proceeding for a divorce the agreement at the option of her husband should become void without prejudice to any right which should then have accrued to either party by virtue thereof. Pursuant to the foregoing agreement the plaintiff turned over to his wife the

articles therein mentioned together with certain shares of stock; the total amount so delivered to her was worth at prices then current $33,000. The plaintiff and the defendant agree that the contract above recited is void and unenforceable.

After the agreement had been executed the parties lived apart in North Adams. The wife took on the management of the theater, collected the revenue therefrom, paid the rent under the lease, the costs of operation, and retained for her own use the profits of the business. After the plaintiff turned over the management of the theater he did not engage in any other business before his wife's death, but lived upon his income. The master found that being thus without daily employment, and feeling less the restraints of matrimony as the result of his separation from his wife, he yielded still further to his obsession for the woman who was not his wife. The remonstrances of his wife and her hope that he would give up his paramour were of no avail — he persisted in his improper companionship. In the spring of 1928 the wife decided to apply for a divorce and informed him to that effect and discussed with him matters of mutual concern. Their interviews were always private. The question of alimony was discussed. He then held a renewal of the lease of the theater for ten years from May 8, 1928, which he transferred to her, thus reasonably assuring to her an available income of about $10,000 a year besides giving her congenial employment. Accordingly, no alimony was to be requested. The stocks, cash and other property previously paid over to her were considered and it was agreed that of the amount she had received from her husband in 1922 she should return as partial restitution the sum of $15,000; this sum she paid him by check dated April 2, 1928, it being understood that it reduced by that amount what she had received when they separated. The plaintiff testified that the payment of $15,000 was for services rendered his wife during the years which followed their separation. The master found, however, that the amount so paid was by way of restoration of a part of the settlement he made upon her when they separated in

September, 1922, and that it was accepted by him as such.

The master further found that, after the plaintiff's wife had informed him of her intention to apply for a divorce and the question of his rights in her estate was discussed, she orally promised to will to him one half of her property. She had previously executed a will dated January 26, 1925, in which she devised and bequeathed to her husband such part of her estate as he would take under the laws of Massachusetts. All the rest of her property she gave to her mother, brothers and sisters. Believing that when he ceased to be her husband nothing would pass to him under the will, she assured him that she would make a new will in which she would give him substantially the same amount of her estate. The master found that with this assurance the plaintiff was content to let her proceed with the divorce without opposition from him. To this extent they intended to modify the previous separation agreement whereby she was not to institute any proceedings for a divorce. Thereafter, on April 6, 1928, she filed a libel in the Probate Court alleging that her husband without just cause deserted her on May 1, 1921, which desertion continued from that time until the date of the libel. There was no prayer for alimony and none was awarded. The libel was served on the plaintiff April 14, 1928, and twelve days later he wrote to the judge of probate, "I do not care to be heard in the matter of the libel of Mrs. Taylor now pending in your court." This letter was received. A decree *nisi* for "utter desertion" was entered on May 23, 1928, and became absolute on November 23, 1928, without objection from the plaintiff. She never made a will as promised, nor did she ever revoke or modify the will made by her dated January 26, 1925. After her death on May 30, 1929, this will was proved and allowed as drawn, without contest or objection.

The written agreement entered into between the plaintiff and his wife in September, 1922, was without legal or binding effect upon either party. A married woman is not authorized to make contracts with her husband. G. L. (Ter. Ed.) c. 209, § 2. *Druker* v. *Druker*, 268 Mass. 334, 339.

It is the contention of the plaintiff that there was a failure of consideration moving from his wife to himself and that he is entitled to $18,000 — the difference between the value of the property turned over to his wife and the payment of $15,000 in partial restitution thereof. He argues that the testatrix received title under an agreement whereby she was to refrain from instituting proceedings for a divorce against him; that this agreement was later modified by the plaintiff's waiver of this clause and the promise of his wife to make a will leaving him one half of her property; and that as she repudiated this agreement by failing to make such a will, the consideration failed.

By the second agreement the plaintiff waived the provisions of the first, in which his wife promised not to begin divorce proceedings, and was content that she should proceed to obtain a divorce without opposition from him upon her oral promise to leave him by will one half of her estate. This agreement was contrary to the statute of frauds, G. L. (Ter. Ed.) c. 259, § 5, which provides that no agreement to make a will shall be binding unless such agreement is in writing signed by the person whose executor or administrator is sought to be charged, or by some person by him duly authorized. *Read* v. *McKeague*, 252 Mass. 162, 164. It follows that the bill cannot be maintained on the ground that there was a failure of consideration. The cases of *Cromwell* v. *Norton*, 193 Mass. 291, and *Kemp* v. *Kemp*, 248 Mass. 354, do not support the contention of the plaintiff upon the facts found.

It is well settled, however, as was stated in *Gahm* v. *Gahm*, 243 Mass. 374, 376, that "There is jurisdiction in equity over suits between husband and wife to secure her separate property, to prevent fraud, to relieve from coercion, to enforce trusts and establish other conflicting rights concerning property." The doctrine so stated is not applicable to the facts found in the present case. The evidence plainly shows that the plaintiff, for the fraudulent purpose of severing the marriage relation and upon the promise of his wife that she would make a will in his favor, declined to appear and answer to the libel for divorce brought by

his wife. Such conduct on the part of the plaintiff, whether with or without the connivance of the testatrix, constituted a fraud upon the Probate Court and was contrary to public policy. A court of equity, in such circumstances, will not assist the plaintiff in his attempt to enforce a trust as sought in the bill of complaint but will leave him where his conduct has voluntarily placed him. *Merrill* v. *Peaslee*, 146 Mass. 460. *Pelowsky* v. *Silverman*, 245 Mass. 339. It is a principle of equity that one seeking its relief must come into court with clean hands respecting the matter in which he seeks relief. *Lyons* v. *Elston*, 211 Mass. 478. *Ewald* v. *Ewald*, 219 Mass. 111, 113. *Weeks* v. *Hill*, 38 N. H. 199. *Phillips* v. *Thorp*, 10 Ore. 494.

*Young* v. *Young*, 251 Mass. 218, *Atkins* v. *Atkins*, 195 Mass. 124, and the other cases cited by the plaintiff are distinguishable in their facts from the present case.

As the plaintiff fails to show any ground for equitable relief the bill was dismissed rightly and the entry must be

*Decree affirmed with costs.*